1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4

5    GREG P. PISTOCHINI,

6              Plaintiff,                    No. C 06-4815 PJH

7        v.                                  **MEMORANDUM DECISION AND
                                             ORDER THERON**
8
     MICHAEL J. ASTRUE, Commissioner
9    of Social Security,[1]

10             Defendant.

11   _____/

12        Greg P. Pistochini ("Pistochini") seeks judicial review of the Commissioner of

13   Social Security's ("Commissioner") final decision denying his claim for disability benefits

14   pursuant to § 205(g) of the Social Security Act ("Act") and 42 U.S.C. § 405(g).  Having

15   considered the parties' cross-motions for summary judgment, the pertinent legal

16   authorities, and having reviewed the administrative record, the court hereby DENIES

17   Pistochini's motion, GRANTS the Commissioner's motion, and AFFIRMS the ALJ's

18   decision.

19                              **BACKGROUND**

20        Pistochini holds both B.S. and M.S. degrees, and completed two years of legal

21   study.  Administrative Record ("A.R.") 17.  Pistochini's employment history includes

22   relevant past work experience as a commercial airline pilot, paralegal, investigator, and

23   vineyard technician.  A.R. 17, 81, 83-85.  He alleges disability since April 21, 2003, due

24   to AIDS, hepatitis C, and depression.  Pistochini contends that the combination of

25   fatigue, depression, and anxiety from these ailments prevents him from performing

26

27

28        [1]Michael J. Astrue became the Commissioner of Social Security on February 12,
     2007.  Pursuant to Rule 25, subsection (d) of the Federal Rules of Civil Procedure, Astrue
     has been substituted for former Commissioner Jo Anne B. Barhnart as the defendant in this
     case.

1  substantial gainful activity, thus rendering him disabled.  While Pistochini's records do

2  indicate occasional poly-substance abuse, his most recent psychiatric review concluded

3  such abuse was not related to his mood swings.

4

5                              **LEGAL STANDARD**

6          To qualify for disability benefits under the Act, a claimant must establish that he

7  was unable to "engage in any substantial gainful activity by reason of any medically

8  determinable physical or mental impairment . . . which lasted or can be expected to last

9  for a continuous period of not less than twelve months."  42 U.S.C. § 416(i)(1)(A).

10         Regulations promulgated by the Commissioner establish a five-step sequential

11 analysis to be used by an ALJ in evaluating a claimant's disability claim.  See 20 C.F.R.

12 § 404.1520.  The inquiry is terminated at the stage where a decision can be made that a

13 claimant is or is not disabled.  See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

14 The claimant bears the initial burden of proving that he suffers from a disability.  See

15 Sanchez v. Sec'y of Health & Human Serv., 812 F.2d 509, 511 (9th Cir. 1987); Gallant

16 v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).  The claimant must demonstrate a

17 medically severe impairment and an inability to perform substantially gainful and past

18 relevant work at Steps One through Four; the burden only shifts to the Commissioner if

19 the sequential evaluation proceeds to the final step.  See 20 C.F.R. § 404.1520(a)(4);

20 Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Andrews v. Shalala, 53 F.3d 1035,

21 1040 (9th Cir. 1995); Gallant, 753 F.2d at 1452.

22         At Step One, the ALJ determines whether the claimant is currently performing

23 "substantial gainful activity."  20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled

24 and his claim is denied, irrespective of medical condition, age, education, and work

25 experience.  Id.  If the ALJ determines that the claimant is not currently engaged in

26 "substantial gainful activity," Step Two requires the ALJ to determine whether the

27 claimant has a medically severe impairment or combination of impairments.  20 C.F.R.

28 § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [the claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the ALJ compares the claimant's impairment(s) to a listing of impairments. If the claimant meets or equals an impairment in the listing, a disability is presumed and benefits awarded. 20 C.F.R. § 404.1520(d). If not, before proceeding to Step Four, the ALJ will assess claimant's "residual functional capacity," ("RFC") to determine, based on all relevant evidence in the record, what is the most the claimant can still do despite his physical and mental limitations. 20 C.F.R. § 404.1520(e). At Step Four, the ALJ compares the claimant's RFC with the demands of his past, relevant work; benefits are denied if he has sufficient RFC. Id. If the claimant possesses insufficient RFC, the burden shifts to the Commissioner at Step Five to prove that the claimant can perform some other specific, substantially gainful work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f).

**ALJ'S FINDINGS**

After performing the requisite sequential analysis in this case, the ALJ determined Pistochini was not disabled. A.R. 21. The ALJ assessed Step One in favor of Pistochini, determining that he had not performed substantial gainful activity since April 21, 2003. At Step Two, the ALJ stated that Pistochini alleged several medical difficulties, including HIV, hepatitis C, major depression, fatigue, and lack of stamina. Despite evidence of a history of relatively poor compliance with HIV and depression medications as well as missed medical appointments, the ALJ found the combination of his HIV and depression to be "severe impairments" within the definition given by 20 C.F.R. § 404.1521. A.R. 18. However, he found that Pistochini's hepatitis C did not represent a severe impairment as it was "essentially asymptomatic and has required no treatment." Id.

Nonetheless, the ALJ concluded that the medical evidence did not support a finding that Pistochini's impairments met or equaled the criteria prescribed under the Listing of Impairments at 20 C.F.R., Part 404, Subpart P, Appendix 1. In determining

that the impairments lacked sufficient severity to meet the listing requirements at Step Three, the ALJ assessed Pistochini's HIV and depression.  The ALJ concluded that Pistochini's "requisite infections or other criteria have not been present" with respect to his HIV, and that the limitations imposed by his depression did not meet or equal the applicable criteria under Listing § 12.04.  A.R. 18.  Thus, before proceeding to Step Four, the ALJ found that Pistochini had an RFC for "work at the light exertional level, with a limitation to no more than occasional public contact."  Id.

At Step Four, the ALJ found Pistochini not to be disabled because he could perform past relevant work in light of his RFC.  In concluding that Pistochini's RFC was at the "light exertional level," the ALJ credited the opinions of Social Security doctors from Disability Determination Services ("DDS"), indicating that Pistochini was in relatively stable physical condition, with improved CD4 levels (363 on August 23, 2004), and that there was no evidence of opportunistic infection.[2]  A.R. 17,118-25, 234-40. The ALJ also relied on an opinion by Pistochini's examining physician, Dr. Hiroyu Hitano, who opined that HIV as a physical limitation was secondary to Pistochini's depression.  A.R. 19, 243.  The ALJ similarly found support for his conclusion by referring to examining physician, Dr. William T. Horne's opinion in which he determined Pistochini was not "totally disabled" by a psychiatric disorder.  A.R. 19, 249.

In arriving at a non-exertional limitation of "no more than occasional public contact," the ALJ credited the January 2005 and July 2004 opinions of DDS medical advisors who found Pistochini to have a "moderate impairment in social interaction." A.R. 19, 135, 139-40.  This restriction was also based on consideration of an assessment performed by examining psychologist, Dr. William L. Schwimmer, and

---

[1] CD4 cells are a type of white blood cell that functions as a regulatory cell of the immune system.  Depletion of CD4 cells is associated with an increased incidence of complications and opportunistic infections in AIDS patients.  See 1-C Attorneys' Dictionary of Medicine 2751.  HIV is often asymptomatic for years, but eventually progresses to AIDS in most instances.  AIDS is characterized by a CD4 cell count below 200.  See 1-A Attorneys' Dictionary of Medicine 3837.

1   Pistochini's own testimony regarding his prior employment history.  A.R. 127.

2          Furthermore, the ALJ explained that he assigned Pistochini only a "mild"

3   impairment in attention and concentration rather than a "moderate" limit because

4   supporting medical opinions relied primarily on Pistochini's subjective complaints to Dr.

5   Schwimmer.  A.R. 19.  Pistochini had alleged he suffered from mood swings,

6   deterioration in memory, and confusion at times.  A.R. 127.  However, the ALJ

7   discounted Pistochini's credibility for several reasons, including: (1) his inconsistency

8   with his generally higher level of work functioning and active personal life; (2) Dr.

9   Horne's observation of his stable mood, satisfactory concentration, and no distractibility;

10  (3) Pistochini's history of non-compliance with medications and missed medical

11  appointments; and (4) his most recent job requiring long hours.  A.R. 19-20.

12         Because the ALJ concluded that Pistochini's RFC would not preclude him from

13  performing past relevant work, he declined to proceed to Step Five of the sequential

14  analysis.  Nonetheless, the ALJ did solicit the testimony of a vocational expert ("VE"),

15  Robert Raschke ("Raschke"), who testified that Pistochini's past relevant work as a

16  paralegal and investigator could be performed given his RFC of "light exertional level"

17  with "no more than occasional public contact."  A.R. 20.  Raschke also testified that

18  Pistochini's acquired skills from multiple prior jobs could translate to "numerous clerical

19  jobs at the light exertional level."  Id.

20                              **DISCUSSION**

21  **A.     Standard of Review**

22         An ALJ decision denying disability benefits can be set aside only if "the ALJ's

23  findings are based on legal error or are not supported by substantial evidence."  Tackett

24  v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is "such relevant

25  evidence as a reasonable mind might accept as adequate to support a conclusion."

26  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallanes v. Bowen, 881

27  F.2d 747, 750 (9th Cir. 1989).  It means "more than a scintilla," Richardson v. Perales,

28  402 U.S. 389, 402 (1971), but "less than a preponderance."  Sorenson v. Weinberger,

514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  The court is required to review the

administrative record as a whole, weighing both the evidence that supports and detracts

from the ALJ's conclusion.  Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993);

McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  The ALJ is responsible for

determining credibility and resolving conflicts in evidence and testimony.  Andrews, 53

F.3d at 1039.  Where the evidence is susceptible to more than one rational

interpretation, the court must uphold the ALJ's decision.  Magallanes, 881 F.2d at 750.

**B.    Issues**

Pistochini seeks remand for the following reasons:

1.    the ALJ erred by not considering the combined effect of Pistochini's
      multiple impairments;

2.    the ALJ's failure to consider lay witness testimony constitutes clear legal
      error;

3.    substantial evidence does not support the finding that Pistochini could
      return to his past relevant work as a paralegal or investigator; and,

4.    substantial evidence does not support the ALJ's decision because he
      proffered an incomplete hypothetical to the VE.

**C.    Analysis**

**I.    ALJ's Consideration of the Combined Effect of Pistochini's Multiple
        Impairments**

Pistochini contends that the ALJ failed to properly consider the combined effect

of his mental and physical impairments as well as their impact on each other.  He

argues that the ALJ's bifurcation of his physical and mental limitations in separate parts

of the decision constitutes legal error and indicates a lack of substantial evidence in

support of the ALJ's conclusion.  Pistochini reasons that such bifurcation suggests the

ALJ failed to assess the joint impact of his determinable impairments.

Thus, Pistochini asserts that the ALJ made an improper severity determination at

Steps Two and Three of his analysis.  Pistochini's arguments on this issue are not

persuasive in large part because he fails to cite any legal or record support for his

arguments.  He claims that depression and anxiety repeatedly impacted his HIV

physical symptoms and vice versa.  Likewise, he claims that his treating doctors observed a pattern of increased symptoms characteristic of depression and anxiety.

As Pistochini bears the burden to demonstrate a disability at Steps Two and Three of the analysis, he fails to show that the ALJ did *not* in fact consider the combined impacts of his exertional and non-exertional limits.  Further, Pistochini does not explain or identify any functional limitations, not already considered by the ALJ, that flow from the combination of his mental and physical impairments.

Pistochini cites to Gregory v. Bowen for the proposition that an ALJ must consider the combined effect of a claimant's multiple impairments in assessing disability.  844 F.2d 644, 666 (9th Cir. 1988).  The present case, however, differs from the specific facts in Gregory.  In Gregory, the Ninth Circuit reversed the ALJ's denial of disability benefits because the psychiatric evidence on record in that case indicated that the claimant "would be unable to return to work unless provided with a near-ideal, sheltered work environment."  844 F.2d at 667.  Since the ALJ based his decision strictly on a physical assessment, ignoring the evidence that the claimant would be psychologically unable to work, the Ninth Circuit held that the decision was not supported by substantial evidence.  Id.  In the present case, however, the ALJ's written decision clearly analyzes evidence of both Pistochini's exertional and non-exertional limitations.  As the Commissioner correctly points out, the ALJ weighed the merits of all of the available medical testimony in making the Step Two finding in favor of Pistochini.  A.R. 17-18.  Thus, although conflicts existed regarding the interpretation of the medical evidence, the ALJ nonetheless considered the combined effect of Pistochini's HIV and depression.

Pistochini further contends that the disagreement between doctors as to the cause of his disability proves that his physical and mental limitations are inseparable, and should have been analyzed by the ALJ as such.  In making this "duality" argument, Pistochini asserts that the existence of conflicting medical testimony suggested his

physical and mental conditions were inseparable, and also that this inseparability required the ALJ to determine his RFC, utilizing a combined assessment.

However, nothing in 20 C.F.R. § 404.1523, the regulation governing severity assessments, speaks to the separability of conditions; rather, it only requires consideration of combined impairments in the determination process.[3]  Moreover, conflicting testimony simply underscores the existing rule, under <u>Andrews</u>, that it is the role of the ALJ to resolve conflicting or unclear medical evidence.  53 F.3d at 1039.  As such, by making reasonable findings regarding the contradictory evidence at Steps Two and Three, the ALJ properly fulfilled his obligations under the controlling law.

**II.    ALJ's Consideration of Lay Witness Testimony**

Pistochini also contends that contrary to Ninth Circuit law, the ALJ disregarded lay witness testimony given on his behalf by his neighbor, Matthew Solem ("Solem"). He contends that the ALJ's failure to discuss Solem's testimony in detail violated the mandates of 20 C.F.R. § 404.1513(d)(4).[4]

Solem's testimony came from a "Function Report Adult Third Party" form.  A.R. 87.  On the form, Solem detailed his time spent with, interaction with, and observations of Pistochini.  <u>Id.</u>  Solem generally spent 20 hours per week helping Pistochini with his meals, shopping, and doctor's appointments.  <u>Id.</u>  Solem attested that Pistochini engaged in light exercise, cooked his own meals, did his laundry, fed and cared for two

---

[2] In determining whether a claimant's physical or mental impairment(s) are of sufficient medical severity to qualify for disability, 20 C.F.R. § 404.1523 provides that the "combined effect" of all impairments should be considered, without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If a medically severe combination of impairments is found, the combined impact of these should be considered throughout the determination process.

[3]  20 C.F.R. § 404.1513(d) provides that evidence from "other sources," other than "accepted medical sources," may also be used as evidence to show the severity of a claimant's impairments and how it affects his/her ability to work. Subsection (d)(4) specifically highlights that, within this group, "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy" may provide testimony as non-medical sources.

dogs, had lowered energy level and stamina, had no problems with personal care, was self sufficient though his chores required rest breaks, could walk and drive a car, managed his finances, and had depression which made him reclusive and caused him to cancel social activities. A.R. 87-91.

In his denial of Pistochini's claim, the ALJ referenced Solem's testimony. After detailing some of Pistochini's self-acknowledged daily activities and capabilities, the ALJ stated that "the third party report also shows a level of activity that is inconsistent with the severe restrictions alleged." A.R. 19. The ALJ referenced Solem's report in explaining his analysis of Pistochini's RFC. Id.

In evaluating how an impairment affects a claimant's work ability, an ALJ should consider observations by non-medical sources at Step Four. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical sources include testimony from spouses, relatives, friends, and neighbors. 20 C.F.R § 404.1513(d)(4). But, where a claimant alleges pain "not supported by medical evidence in the file", the Commissioner's Rulings require the ALJ to consider lay witness testimony. SSR 88-13. Disregard of such evidence violates 20 C.F.R. § 404.1513(d)(4). Having been directed to consider lay testimony, the ALJ can reject it "only if he gives reasons germane to each witness whose testimony he rejects." Dodrill, 12 F.3d. at 919.

Like the procedural requirement for evaluating medical severity under Steps Two and Three, the case law only requires consideration of non-medical testimony, not wholesale acceptance of it. Id. While Pistochini cites Dodrill in support of his argument, the present case is distinguishable. In Dodrill, the court reversed the ALJ's decision because the ALJ was under the mistaken impression that lay witnesses could never make independent observations regarding a claimant's subjective claims of pain. Id. Furthermore, the ALJ in Dodrill incorrectly asserted that witness accounts were based on the claimant's own assertions, and thus negated the credibility of their accounts. Id. Neither of those errors were made by the ALJ in this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

In the present case, the ALJ did *not* simply reject the lay testimony.  Though the ALJ's commentary was brief with respect to Solem's statements, he nevertheless gave the evidence sufficient weight and consideration, adequate to meet his procedural duty. The ALJ's statement that "the third party report also shows a level of activity that is inconsistent with the severe restrictions alleged," indicates he considered Solem's statements to be more credible than Pistochini's assertions of pain.  Indeed, as the ALJ appropriately acknowledged, Solem's testimony was incongruent with Pistochini's disability claim.  The record shows that Solem attested that Pistochini engaged in "light exercise" (A.R. 87), went out daily (via walking, driving, or riding in a car) and could shop (A.R. 90), cared for two dogs (A.R. 88), attended American Legion meetings and spent time with others (A.R. 91), and was "pretty self sufficient."  (A.R. 89).  In making a RFC determination and performing his Step Four analysis, the ALJ clearly considered the conflicting accounts, as well as relevant medical testimony, before concluding that Pistochini could return to past, relevant work.  Thus, the ALJ need not have given detailed reasons for rejecting Solem's account because he actually *accepted* and utilized Solem's lay testimony to support his decision.

17
18
19
20
21
22
23
24
25
26

Though Pistochini interprets Solem's lay testimony contrary to the ALJ's interpretation, the ALJ's finding must be afforded deference.  Where evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision.  Magallanes, 881 F.2d at 750.  Confronted with internally inconsistent evidence, the ALJ chose to accord Solem's lay witness testimony *greater* evidentiary weight than Pistochini's subjective complaints.  The brevity of the ALJ's discussion does not undermine the fact that he ultimately embraced Solem's statements.  In offering a well-supported RFC determination, which accounted for similarly conflicting medical assessments, the ALJ proffered a reasonably supportable interpretation.  As such, the ALJ properly evaluated the available lay witness testimony.

27
28

1

2

### III.    Pistochini's Ability to Return to Past Relevant Work

####     a.    Concentration, Persistence, and/or Pace Limitations

3

4

5

6

7

8

9

10

Pistochini also broadly claims that the ALJ's assessment at Step Four lacks substantial evidence.  He asserts that the ALJ's RFC determination suggests that the ALJ ignored certain physical and mental limitations in his analysis.  Pistochini contends that while Social Security doctors diagnosed him with a "moderate" difficulty in "Maintaining Concentration, Persistence, or Pace," the ALJ's decision only recognized a "mild" limitation, which he claims was unsupported by the record.  Thus, Pistochini argues that the ALJ erroneously concluded at Step Four that he could return to skilled paralegal or investigator work.

11

12

13

14

15

16

17

18

19

20

Pistochini's contentions here concern his RFC.  An ALJ's determination of a claimant's RFC may be overturned only if the ALJ applied an improper legal standard or his decision is not supported by "substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) .  As noted, "substantial evidence" is defined as "more than a scintilla," Richardson, 402 U.S. at 402, but "less than a preponderance," Sorenson, 514 F.2d at 1119 n.10.  Resolution of any conflicts in evidence and medical testimony which arise, as in the present case, lie within the ALJ's domain.  Andrews, 53 F.3d at 1039.  Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision.  Id.

21

22

23

24

25

26

27

Pistochini cites only one side of the medical testimony on this issue.  A.R. 135.  However, the ALJ clearly provided a countervailing reason for giving a "mild limitation," crediting Dr. Horne's testimony indicating that Pistochini had no concentration limits.  A.R. 19, 249.  The ALJ also justified his RFC determination by discounting Pistochini's subjective complaints, and citing Pistochini's higher level of work functioning, active personal life, history of non-compliance with medications, and his most recent job.  A.R. 19-20.  Since it was a reasonably supportable interpretation, based on the available

28

1
2
medical evidence, and within his discretion, the ALJ's decision was supported by substantial evidence.

3
**b.     GAF Scores**

4
5
6
7
8
Pistochini additionally contends that the ALJ erred by rejecting the opinions of three of his "treating" physicians without articulating specific reasons for doing so. Pistochini claims that the Global Assessment of Functioning ("GAF") scores given by Dr. Horne, Dr. Schwimmer, and Dr. Stephen Pennington all indicated a marked, mental limitation and serious impairment, proving he cannot return to his prior, skilled work.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
The GAF scale is used in the multi-axial evaluation system endorsed by the American Psychiatric Association. 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000). Scores are used to track clinical progress of individuals in global terms, using a single measure to rate psychological, social, and occupational functioning.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: Multiaxial Assessment (2002).  The GAF score represents a single value that best reflects the individual's overall level of functioning.  Id.  Higher scores reflect lower levels of symptom severity and higher levels of functioning.  Id.  The scale is divided into 10 point ranges between 1 and 100; each range represents a level of functioning on a hypothetical continuum of mental health illness.  Id.  A GAF rating between 41-50 indicates "serious symptoms . . . or any serious impairment in social, occupational, or school functioning."  Id.  Even stronger, a GAF score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  Id.

23
24
25
26
27
28
In this case, three of Pistochini's doctors gave him GAF scores under 50. Psychiatrist, Dr. Schwimmer, diagnosed Pistochini with a GAF score of 48 in June, 2004.  A.R. 128.  Later that year in September, Pistochini's psychologist, Dr. Pennington, noted that he had a GAF score of 40.  A.R. 259.  In his most recent assessment, in March 2005, Pistochini received a GAF score of 48 from his psychiatrist, Dr. Horne.

1   The Social Security Administration's regulatory comments clearly indicate that

2   the GAF scale is not endorsed for use in Social Security disability programs.  Revised

3   Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.

4   Reg. 50,746, 50,765 (Aug. 21, 2000).  In fact, because a GAF score does not have a

5   "direct correlation" to Social Security "severity requirements" for mental disorders

6   listings, it is inapplicable at Steps Two and Three.  Id.  However, a clinician may use a

7   GAF score to rate the psychological, social, and occupational *functioning* of a patient

8   even if the "scale does not evaluate impairments caused by psychological or

9   environmental factors."  See  Morgan, 169 F.3d at 598 n.1.  (emphasis added).  As

10  such, a GAF score may be used to "provide valuable additional functional information,"

11  for an ALJ in making a RFC determination.  Revised Medical Criteria for Evaluating

12  Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,765 (Aug. 21,

13  2000).  Thus, though a GAF score is technically a medical opinion, for disability

14  determination purposes, it is a medical opinion on an issue "reserved to the

15  Commissioner because they are administrative findings."  20 C.F.R. § 404.1527(e).

16  Since the "final responsibility for deciding these issues is reserved to the

17  Commissioner," 20 C.F.R. § 404.1527(e)(3) directs that special significance will not be

18  afforded to the sources of GAF opinions.

19  Pistochini's assertions as to the relevance of his GAF score are without

20  evidentiary or legal support.  While he defines what a GAF score is, Pistochini fails to

21  explicate what impact his GAF score has on the disability determination process.

22  Pistochini claims that his range of GAF ratings are equivalent to a "marked limitation or

23  restriction in functioning" that must be considered.  He cites nothing to support this, nor

24  does he specifically point to any errors with his RFC, as determined by the ALJ.

25  In reviewing the medical opinions of Pistochini's physicians, the ALJ incorporated

26  his consideration of Pistochini's GAF scores in determining his RFC.  This occurred

27  prior to the ALJ's conclusion at Step Four that Pistochini was able to return to his past

28  work.  A.R. 17, 19.  Because consideration of Pistochini's GAF scores was optional and

1  because the scores are not entitled greater evidentiary weight under 20 C.F.R. §

2  404.1527(e)(3), an ALJ's conclusion at Step Four does not constitute legal error simply

3  because it conflicts with a physician's opinion as to a claimant's GAF.  See, e.g.,

4  Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score

5  may be of considerable help to the ALJ in formulating the RFC, it is not essential to the

6  RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC,

7  standing alone, does not make the RFC inaccurate").  Even if Pistochini's contentions

8  regarding his limitations are true, it is the ALJ's province to evaluate competing

9  evidence in deciding a final RFC.  Andrews, 53 F.3d at 1039.

10      Because Pistochini's RFC represented an assessment of his abilities in spite of

11  his physical and mental limitations, the ALJ considered all relevant evidence in the

12  record, not just medical opinions.  20 C.F.R. § 404.1520(e).  Here, the ALJ arrived at

13  Pistochini's RFC by crediting the opinions of two of his examining physicians, Dr. Hitano

14  and Dr. Horne.  A.R. 19.  The ALJ based his decision on Dr. Hitano's opinion that

15  Pistochini was not physically disabled and Dr. Horne's conclusion that he was not

16  mentally disabled by a psychiatric disorder.  Id.  Though both physicians noted

17  Pistochini's generally lower GAF scores as part of their assessment, the ALJ decided to

18  rely more on the ultimate conclusions of each doctor as to Pistochini's disability.  Id.  In

19  addition, the ALJ pointed to non-medical considerations like Pistochini's active social life

20  and Pistochini's testimony about the physicality of his most recent job duties.  A.R. 19-

21  20.  Thus, given the evidence before him, the ALJ properly exercised his discretion in

22  reconciling the inconsistencies within the record.

23      Moreover, the Ninth Circuit has clearly distinguished between and afforded

24  relative weight to the opinions of three types of physicians: (1) those who treat the

25  claimant (treating physicians); (2) those who examine but do not treat the claimant

26  (examining physicians); and (3) those who neither examine nor treat the claimant (non-

27  examining physicians).  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995);  see also 20

28  C.F.R. § 404.1502.  Generally, more weight should be given to the opinion of a

"treating" source, than an "examining" one.  20 C.F.R. § 404.1527(d).  Where a treating

doctor's opinion is uncontradicted by another, it may only be rejected for "clear and

convincing reasons."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Where a

treating doctor's opinion is contradicted, however, the ALJ still may not reject that

opinion without "specific and legitimate" reasons, supported by substantial evidence in

the record.  Lester, 81 F.3d at 830.

Though Pistochini contends that the opinions of "treating" physicians possess

special evidentiary weight, he has not shown that Dr. Horne, Dr. Schwimmer, and Dr.

Pennington fall within that category.  Pistochini is silent as to whether any of the three

doctors had "an ongoing treatment relationship" with him, as required by 20 C.F.R. §

404.1502.  Indeed, the record is bereft of evidence or documentation showing

continuing treatment from any of the sources.  A.R. 141-233, 241-85.  While each of the

three physicians at issue examined Pistochini, none had a "continuing relationship" with

him that would make the doctor(s) "especially qualified to . . . form an overall conclusion

as to functional capabilities and limitations."  Lester, 81 F.3d at 833.  As a result, the

ALJ was not required to afford greater evidentiary force to any of their opinions.  Thus,

for these reasons, too, the ALJ's decision was supported by substantial evidence.

### IV.    The ALJ's Hypothetical to the VE

Pistochini also argues that the hypothetical the ALJ presented to the VE

erroneously lacked all of his mental and physical limitations.  Pistochini specifically

contends that the ALJ neglected to advise the VE of his postural, social functioning, and

concentration limitations diagnosed by examining physicians.  In addition, he alleges

that the ALJ's hypothetical failed to include limits on his ability to understand instructions

and perform skilled work.

While a VE is normally used at Step Five, in this case, the ALJ proffered a

hypothetical to the VE at Step Four and determined that Pistochini had sufficient RFC to

perform his past relevant work.[5]  A.R. 20.  Upon review of Pistochini's work history, the

VE classified the physical exertion levels required of his prior jobs.  A.R. 332.  Notably,

the VE stated that Pistochini's paralegal work was classified as "light," while his

investigatory work was less strenuous and "sedentary."  Id.  Subsequently, the ALJ

asked the VE what jobs someone with a limitation at the "light work" level could perform.

Id.  The VE pointed to the paralegal and investigation jobs Pistochini previously held,

stating that those offered the "most transferable skills."  A.R. 334.  The ALJ then

proceeded to include a further limitation of only "occasional" public contact, defining

"occasional" as up to "a third of the work day."  Id.  The VE replied that that limitation

would not, in and of itself, "knock either the paralegal or the investigator job off the

table."  A.R. 335.

Here, since the ALJ concluded his sequential analysis at Step Four, he owed no

statutory duty to use VE testimony to determine whether Pistochini could work other

jobs in the national economy, analysis which usually takes place at Step Five.

Matthews, 10 F.3d at 681.  In Matthews, under circumstances similar to this case, the

Ninth Circuit upheld an ALJ's decision rejecting the claimant's argument that the ALJ's

VE hypothetical, posed at Step Four of his analysis, was inadequate.  Id.  The court

reasoned that because the hypothetical took place at Step Four instead of Step Five,

---

[4] Where a claimant shows that he cannot return to his previous job at Step Four,
the burden of proof shifts to the ALJ at Step Five to show that the claimant can
do other kinds of work.  Embrey, 849 F.2d at 422.  In order to deny disability at
Step Five, the ALJ must show that the claimant can perform other types of
substantial, gainful work that exists in significant numbers in the national
economy.  20 C.F.R. § 404.1520(f); Sample, 694 F.2d at 643.  For this purpose,
VE testimony may be generally useful but is not required.  Matthews, 10 F.3d at
681.  However, if other reliable evidence of a claimant's ability to perform specific
jobs is unavailable, then the ALJ must use the testimony of a VE to meet his
burden.  Id.; Magallanes, 881 F.2d at 756.  In doing so, hypothetical questions
posed to the VE by an ALJ, must "set out all the limitations and restrictions of the
particular claimant."  Embrey, 849 F.2d at 422.  Nonetheless, the ALJ need not
include limitations in the hypothetical unless they are substantiated by medical
evidence or are based in subjective complaints which were properly discounted.
Thomas v. Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002).

1    the burden of proof had not yet shifted to the Commissioner.  Id.  As such, the court
2    held that whether or not the ALJ erred in including all of the claimant's limitations in the
3    VE hypothetical was irrelevant; "any error would have been harmless."  See Curry v.
4    Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990).  Thus, the Matthews court noted that the
5    VE's testimony was considered "useful, but not required."  10 F.3d at 681.

6            The present case is factually similar to Matthews because the burden never
7    shifted to the ALJ; as such, the ALJ's decision to use VE testimony at Step Four was
8    optional, not statutorily prescribed.  Here, at the time the ALJ utilized the VE, he had
9    already appropriately determined that Pistochini had an RFC at the "light exertional
10   level" with "no more than occasional public contact."  A.R. 21.  At Step Four, the ALJ's
11   duty was simply to assess Pistochini's prior work history and determine what jobs he
12   could perform given his RFC.  20 C.F.R. § 404.1520(e).

13           Moreover, "it is proper for an ALJ to limit a hypothetical to those impairments that
14   are supported by substantial evidence in the record."  Osenbrock v. Apfel, 240 F.3d
15   1157, 1165 (9th Cir. 2001).  When conflicting testimony or evidence arises, however, it
16   is the ALJ's province to be the arbiter and determine evidentiary credibility.  Andrews,
17   53 F.3d at 1039.  Though Pistochini contends that his every limitation should have been
18   presented to the VE, the ALJ clearly had discretionary authority to present only those
19   restrictions he deemed were supported by credible, substantial evidence.  Id.  Here, all
20   the particular limitations Pistochini alleges were improperly excluded had actually
21   already been considered by the ALJ either in his severity determinations at Steps Two
22   and Three or in ascertaining Pistochini's RFC prior to Step Four.  That a particular
23   limitation may have been omitted from the VE hypothetical at Step Four simply indicates
24   that the ALJ previously determined that it lacked substantial evidentiary support or was
25   incredible and/or in dispute.

26           First, Pistochini specifically asserts that the postural limitations prescribed by his
27   Social Security doctors of "only occasional climbing, balancing, stooping, kneeling,
28   crouching, and crawling" were absent in the VE's hypothetical.  A.R. 120.  While it is

1   true all limitations must be presented if a VE's testimony is mandated at Step Five,

2   because the hypothetical here took place at Step Four instead of Step Five, those

3   limitations had already been subsumed in the ALJ's RFC determination, which itself was

4   supported by substantial evidence.  See, e.g., Embrey, 849 F.2d at 422 (in the absence

5   of reliable evidence of a claimant's ability to perform specific jobs, a vocational expert

6   must be given a hypothetical inclusive of all limitations); Matthews, 10 F.3d at 681

7   (claimant's testimony regarding requirements of past work may make a limitation

8   irrelevant for purposes of a hypothetical).

9           Furthermore, although the ALJ did not enumerate Pistochini's specific postural

10   limits for the VE, his RFC hypothetical was consistent with Pistochini's limitations of

11   occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  In

12   propounding a RFC of "light exertional level" with "no more than occasional public

13   contact," the ALJ provided the VE with a category which subsumed such limitations.

14   Social Security Ruling 85-15 supports the ALJ's determination that Pistochini's postural

15   limitations were in accordance with his prior jobs in the light level of work.  Specifically,

16   Ruling 85-15 provides that limitations in climbing, balancing, crawling, and kneeling "do

17   not ordinarily have a significant impact on the broad world of work" and that the ability to

18   "occasionally" stoop and crouch leaves the sedentary and light occupational base

19   "virtually intact."  SSR No. 85-15 (1985).  Thus, since the Dictionary of Occupational

20   Titles classifies the paralegal position as "light work" (DOT 119.267-026) and the legal

21   investigator position as even less strenuous "sedentary work" (DOT 119.267-022),

22   Pistochini's postural limitations would not come into play.  Pistochini's prior positions

23   both fall into job categories in which his limitations would have no discernible impact.

24   Thus, presented with a hypothetical limitation at the "light exertional level," the VE drew

25   from Pistochini's relevant work history to conclude that paralegal and investigator

26   positions were still viable.

27           Second, Pistochini contends that the findings of other Social Security doctors that

28   he had moderate "Difficulties in Maintaining Social Functioning and Difficulties in

Maintaining Concentration, Persistence, or Pace," were improperly excluded from the hypothetical.  A.R. 135.  Again, since the ALJ was utilizing VE testimony at Step Four, consideration of these mental "functional limitations" had already occurred.  The findings Pistochini cite derive from a form report called a Psychiatric Review Technique Form ("PRTF").  A.R. 135.  Social Security Ruling 96-8p provides that paragraphs B and C of the PRTF, on which Pistochini bases his claim, are not to be used for RFC assessments, especially since the mental determinations used at Steps Four and Five require "a more detailed assessment."  SSR No. 96-8p (1996).  Rather, the limitations identified there are to be "used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  Id.  Thus, Pistochini's challenge to the completeness of the ALJ's hypothetical to the VE at Step Four is incorrect because such limitations are relevant only for analysis at Steps Two and Three.  Id.

Nevertheless, here the ALJ actually did consider the limitations on the PRTF in performing his Steps Two and Three analysis.  A.R. 19.  Before moving to Step Four, the ALJ weighed the conflicting medical testimony as well as the inconsistencies between Pistochini's claims and admissions.  Id.  In arriving at Pistochini's RFC, the ALJ excluded these limits as unsupported by substantial evidence.  Id.  While exercising his discretion to weigh conflicting evidence, the ALJ then declined to include these limitations at Step Four.  As Pistochini neglects to specifically refer to aspects of the ALJ's decision that are unreasonable or unsupported by substantial evidence, the court must defer to the ALJ's findings.  Andrews, 53 F.3d at 1039.  Furthermore, because the excluded limitations are not supported by substantial evidence in the record, they need not be included in the VE's hypothetical.  Osenbrock, 240 F.3d at 1165.

Third, Pistochini also contends that the VE's hypothetical was incomplete because it did not include that he was moderately limited in his ability to carry out, understand, and remember detailed instructions. A.R. 139.  As such, he posits that the hypothetical ignored his Social Security doctor's findings that he should be confined to simple, routine, repetitive tasks or unskilled work.  A.R. 140, 235, 239.  However,

1
2
3

Pistochini's argument fails to acknowledge that these limitations were considered and resolved by the ALJ in determining his RFC, after Step Three and before Step Four. A.R. 18-20.

4
5
6
7
8
9
10
11
12

In arriving at Pistochini's RFC, the ALJ balanced the competing evidence regarding his ability to deal with instructions.  The ALJ indicated that he discounted the Social Security doctor's findings because those observations were based on Pistochini's uncredible, subjective statements.  A.R. 19.  Furthermore, the ALJ explained that those findings were also inconsistent with Pistochini's admitted level of work functioning and personal life, as well as Dr. Horne's observations of satisfactory concentration and no distractibility.  Id.  Because the "ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," this RFC assessment was properly within his power to determine.  Andrews, 53 F.3d at 1039.

13
14
15
16
17
18
19
20

Thus, because the ALJ propounded the challenged hypothetical to the VE at Step Four of his analysis for the sole purpose of determining which of Pistochini's past jobs he could perform, the ALJ was not required to include in the hypothetical those limitations that he had already previously considered and rejected when he assessed Pistochini's RFC.  Since the ALJ did not err in his determination regarding Pistochini's RFC, the established RFC-related limitations the ALJ included in the VE hypothetical were supported by substantial evidence, and the hypothetical also included all of the requisite limitations.

21

**CONCLUSION**

22
23

For the foregoing reasons, Pistochini's motion for summary judgment is DENIED, and the Commissioner's cross-motion is GRANTED.

24
25
26
27
28

The ALJ's written decision offers substantial evidence that he considered the effect of Pistochini's combined impairments at Steps Two and Three.  Similarly, substantial evidence indicates the ALJ also considered the relevant lay witness testimony while subsequently assessing Pistochini's RFC.  In assessing Pistochini's RFC and in assessing his ability to return to past work at Step Four, the ALJ analyzed

conflicting evidence about Pistochini's functional limitations.  He appropriately assessed the competing testimony and concluded that Pistochini could return to perform past relevant work.  Given the ALJ's authority to make final determinations with respect to the credibility of conflicting evidence, Pistochini has not shown that the ALJ made improper assessments at Steps One through Four.  Moreover, though the use of a VE hypothetical at Step Four was optional, the ALJ propounded a sufficiently inclusive hypothetical, based on his consideration of all of Pistochini's claimed limitations at prior steps in the sequential analysis.  Because the ALJ properly performed his duties as required by the five-step sequential analysis, the court AFFIRMS the ALJ's decision.

This order fully adjudicates the motions listed at Nos. 17 and 20 of the clerk's docket for this case.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 16, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge